UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES HAMRAC and STEPHANIE HAMRAC,
Husband and Wife, and
JAMES HAMRAC and STEPHANIE HAMRAC,
as natural parents and guardians of
J.H., a minor,

     PLAINTIFFS,

vs.                                   **CASE NO.: 3:09CV390/RV/MD**

DOREL INDUSTRIES, INC.

     DEFENDANTS.

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANT

### A.    ISSUE PRESENTED

The sole issue raised by the Motion for Summary Judgment is whether or not, based on the facts presented in the parties' Memoranda, the applicable Statute of Limitations had expired prior to the time the Plaintiffs filed this lawsuit.

### B.    ARGUMENT

The motor vehicle accident which caused injuries to J.H., a three year old boy at the time of the accident, occurred on April 6, 2003. This lawsuit was filed on July 2, 2009. The Defendant argues that the applicable four year statute of limitations began to run on the date of the accident, or

shortly thereafter, and that the limitations period had expired by the time this lawsuit was filed. As

the Defendant points out in its Memorandum, the applicable Statute of Limitations is four years.

F.S. 95.11(3)(e) and 95.031(2). However, even though the Defendant correctly states that Florida

Statutory Law says that a cause of action for a products liability claim begins when the facts giving

rise to the products liability claim are discovered or should have been discovered with the exercise

of due diligence, the Defendant fails to review the Florida case law which spells out when the

elements of a products liability cause of action are considered to have been discovered or should

have been discovered.

The case of Babush v. American Home Products Corporation 589 So. 2d 1379(4DCA 1992)

is a case in which the Court was faced with the exact issue being argued in this case-when does the

statute of limitations begins to run in a products liability case. The Court reviewed the case law,

including two Florida Supreme Court cases, and made clear that there was a distinction between the

time when a cause of action for products liability accrues and the time when other causes of action,

such as medical malpractice, accrues. The Court said, for example, in a medical malpractice case,

a cause of action arises when the plaintiff knows there was medical negligence and also knows there

was an injury, whether or not he knows the medical negligence caused the injury. However, and this

is a very important distinction in this case, a cause of action for products liability begins to run,

according to the Babush Court, when the plaintiff knew or should have known three essential

elements- 1) awareness of the existence of a serious physical injury, 2) knowledge that the product

(a drug in that case) had been used, and 3) knowledge that the product may have contributed to the

injury. Babush at 1381.

The Babush Court, in establishing that the Florida Supreme Court said that these three elements began the running of the statute of limitations in a product liability case, interpreted these three elements to mean that the plaintiff must be aware that there was an injury distinct in some way from conditions naturally to be expected from the plaintiff's condition and that the plaintiff knew that he had been exposed to the product in question.  Babush at 1381. In other words, the plaintiff must know about the exact injury that is the basis of the injury claim and know that the injury may have been caused by the product in question.  This is referred to as the discovery rule- the statute of limitations begins to run when the injury is discovered.  Sawaya, Florida Personal Injury Law and Practice 2005 edition at p. 925.  See Diamond v. ER Squibb 397 So 2d 671 when the Florida Supreme Court allowed a product liability lawsuit to proceed 20 years after the product was used.

The Fourth District actually had made this point earlier in a case,  Feil v. Challenge-Cook Brothers Incorporated 473 So.2d 1338(4DCA)1985.  In the Feil case, the Court made the point, in interpreting Florida statute section 95.031(2), that the statute of limitations in a products liability case cannot begin to run until the plaintiff discovers the exact injury given rise to the cause of action Feil at p.1340.

In this case, the only injury that the Plaintiffs initially knew about regarding their three old son that resulted from the accident were scratches and bruises in a couple of locations on his body including his forehead, along with a bump on his forehead. (Deposition of Mrs. Hamrac at page 18 and deposition of Mr. Hamrac at page 25). The injury that forms the basis of this cause of action is

an injury to his brain. The testimony of both Plaintiffs in their depositions, along with the Affidavits

of the Plaintiffs, show that they first learned of the brain injury in January, 2006 after certain testing

was done by a pediatric neurologist, Dr. Suhrbeir, who told them that, according to the testing, their

son had a brain injury and the brain injury had to have been caused by a trauma. (Deposition of Mrs.

Hamrac at page 60 and deposition of Mr. Hamrac at page 80 and affidavit of Mrs. Hamrac). The

only head trauma experienced by J.H. was a blow to the head in this motor vehicle accident.

There was no discussion about the existence of a brain injury at Sacred Heart Hospital

where J.H. went at the time of the accident. In fact, the testing done at the hospital showed no sign

of any type of brain injury and the diagnosis at the emergency room was a head injury. The only

head injury was the scratches and bruises to the forehead along with the bump on the forehead. As

the Plaintiffs were told to do, they took their son to his pediatrician immediately after his visit to

the emergency room to have the pediatrician check their son for injuries and the pediatrician

examined J.H. and concluded that he was fine, with no injuries. (Deposition of Mrs. Hamrac at

pages 17-21 and pages 23-24 and deposition of Mr. Hamrac at pages 47-48 and affidavits of Mr. and

Mrs. Hamrac).

The Defendant argues that a cause of action arose on the day of the accident or shortly

thereafter when the Plaintiffs realized the carseat was defective and had allowed J.H. to be projected

into the back of the passenger front seat with the resulting blow to his head. However, no one,

neither the Plaintiffs nor the doctors, nor anyone else knew anything about a brain injury and, again,

the testing did not show any brain injury. The Plaintiffs had no reason to suspect a brain injury

because, not only did the medical personnel tell them that the only injury to the head were the scratches and scrapes and the bump, but the behavior that developed over the next two years after the accident seemed to the Plaintiffs, and reasonably so, to be a worsening of the temper and behavior problems that J.H. had experienced for at least a year prior to the accident. J.H. had been diagnosed with attention deficit disorder prior to the accident and the diagnosis remained the same after the accident. There was never any other diagnosis until Dr. Suhrbier made the finding of the brain injury in January, 2006. (Deposition of Mrs. Hamrac at pages 30-37 and deposition of Mr. Hamrac at pages 62-64 and affidavits of Mr. and Mrs. Hamrac).

It is important to note that this case involves a little boy who was three (3) years old at the time of the accident. This is not a case in which a mature adult may have been able to recognize that his conduct was such that maybe there was reason to think he had a brain injury. J.H., at ages 3, 4, 5, and 6, is certainly not going to recognize symptoms of a potential brain injury and with his history of problems with his conduct well before the accident and the diagnosis of attention deficit disorder remaining the same before the accident as after the accident, there was no reason for the Plaintiffs, in light of all of these circumstances, to suspect a brain injury.

As the Babush court said, the cause of action would not accrue until these plaintiffs became aware of the existence of a serious physical injury and that the injury was distinct in some way from conditions naturally to be expected from the condition of J.H. That point in time did not occur until January, 2006 when they were told, for the first time, that their son had a brain injury. As stated in Feil, it was at that point that they discovered the injury which gave rise to the cause of action.

In fact, the Defendant's argument that the cause of action arose on the day of the accident or shortly thereafter would mean that the injury claim would have been for the few scratches and bruises on J.H.'s body and forehead along with a bump on his forehead. These scratches, bruises, and bump cleared up right away and certainly would not have made for a meaningful cause of action. In fact, under Florida's No-Fault Statute, <u>Florida Statute 627.737</u> because these bruises, scratches and bump were not permanent, the Plaintiffs could not have even legally gone forward with a cause of action against the other driver for injuries from the automobile accident until the brain injury was diagnosed.

It is significant that, despite the fact that the Plaintiffs retained counsel for the injuries sustained by Mr. Hamrick with counsel being retained within a year of the accident, the Plaintiffs did not retain counsel for injuries sustained by their son until after they learned of this brain injury. (Deposition of Mr. Hamrac at page 81 and deposition of Mrs. Hamrac at page 62).

Based on Florida Law, the Plaintiffs had a four year period of time from January, 2006, the date that they learned of the brain injury, to file this lawsuit. They filed the lawsuit within the Statute of Limitations when they filed it on July 1, 2009.

The Plaintiffs did not know nor did they have reason to know that there was a brain injury until Dr. Suhrbier told them and that is when the cause of action arose. <u>Florida Statute 95.031(2)</u> states that the cause of action for products liability case begins to run when the facts giving rise to the cause of action are discovered or should have been discovered and this brain injury was discovered on January 30, 2006 and no one-neither the parents, the doctors, nor anyone else-knew

of a brain injury prior to that date.  The Plaintiffs simply could not have had a cause of action until they knew the nature of the injury.

## C.     CONCLUSION

Plaintiffs respectfully suggest to the Court that, as a matter of law, the Court should rule that the Statute of Limitations began to run on January 30, 2006.  In the alternative, as in Babush, it is an issue of fact which can be resolved by a jury.

/s/ Samuel W. Bearman
Samuel W. Bearman
Fla. Bar No. 216127
820 N. 12th Avenue
Pensacola, FL 32501
Telephone: (850) 438-1000
Facsimile: (850) 438-1022
Attorney for the Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent to Michael A. Montgomery, Esquire and John C. Pierce, Esquire by Notice of Electronic Filing this 30th day of March, 2010.

/s/ Samuel W. Bearman
Samuel W. Bearman
Fla. Bar No. 216127
820 N. 12th Avenue
Pensacola, FL 32501
Telephone: (850) 438-1000
Facsimile: (850) 438-1022
Attorney for the Plaintiffs
